UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:00-CR-28-TS |
| | ) | |
| JAMES ERVIN | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant James Ervin's Motion for Judgment of Acquittal or In the Alternative for a New Trial [DE 1363], filed on September 17, 2004. For the reasons set forth below, the Court DENIES the Defendant's Motion.

## BACKGROUND

On November 20, 2003, after a sixteen day trial, a jury found Defendant Ervin guilty of the following charges contained in the government's Fourth Superceding Indictment: one count of drug conspiracy, in violation of 21 U.S.C. § 846; one count of drug trafficking, in violation of 21 U.S.C. § 841(a)(1); four counts of using a communication facility in connection with a drug trafficking offense, in violation of 21 U.S.C. § 843(b); two counts of extortion under color of official right, in violation of 21 U.S.C. § 1951; four counts of causing the death of another in relationship to a drug trafficking offense, in violation of 21 U.S.C. § 848(e)(1)(A); one count of traveling in interstate commerce with the intent to commit a crime of violence, in violation of 18 U.S.C. § 1952(a)(2); and two counts of carrying a firearm during a crime, in violation of 18 U.S.C. § 924(c)(1).

## ANALYSIS

The Defendant's Motion alleges that he should be acquitted on some or all counts or in the alternative be granted a new trial based on alleged errors at trial. The Defendant's contentions can be grouped into the following categories: (I) the Defendant is entitled to a judgment of acquittal because the government failed to prove each and every element of the offenses charged beyond a reasonable doubt and the evidence was insufficient to prove the Defendant's guilt on each and every count in the Fourth Superceding Indictment; (II) the Defendant is entitled to a new trial because of errors committed in this case including, but not limited to, an outline of alleged errors listed (a) through (t). The government maintains the Defendant's motion should be denied based on the fact that his arguments are not supported by any new caselaw or facts that were not considered in the pretrial motions and/or at trial.

**A.      Standards of Review**

Under Federal Rule of Criminal Procedure 29, a court may acquit a defendant of "one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses." When reviewing a motion for judgment of acquittal pursuant to Rule 29, the Seventh Circuit mandates that the district court determine

> whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government . . . bearing in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

*United States v. Reed*, 875 F.2d 107, 111 (7th Cir. 1989); *see also United States v. Bond*, 231 F.3d 1075, 1076 (7th Cir. 2000). In short, the court views all the evidence in the government's favor and

2

is absolutely barred from second-guessing the jury's credibility determinations or findings of fact. *Reed*, 875 F.2d at 111. Instead, the court merely assesses the record to determine if all the admissible evidence supports the defendant's adjudication of guilt beyond a reasonable doubt. *Id.*

Federal Rule of Criminal Procedure 33 permits a court to order a new trial "in the interests of justice." Unlike a motion for acquittal under Rule 29, in ruling on a motion for a new trial under Rule 33, the court is not required to view the evidence in a light most favorable to the government. *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999); 58 Am. Jur. 2d New Trial § 391 (2001). However, despite the more lenient standard, Rule 33 motions are nevertheless disfavored and courts generally should only grant them in "the most extreme cases." *United States v. Linwood*, 142 F.3d 418, 422 (7th Cir. 1998); *see also United States v. Kamel*, 965 F.2d 484, 490 n.7 (7th Cir. 1992). The trial court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Reed*, 875 F.2d at 113. The court may only order a new trial if "the verdict is against the manifest weight of the evidence" and a guilty verdict would result in a "miscarriage of justice." *Washington*, 184 F.3d at 657.

It is the movant's responsibility to develop his arguments and present the court with adequate grounds and authority to grant the requested relief. The Seventh Circuit has held,

> "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)." *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991); *see also* Fed. R. App. P. 28(a)(4); *United States v. Brown*, 899 F.2d 677, 679 n.1 (7th Cir. 1990). "It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel." *Beard v. Whitley County REMC*, 840 F.2d 405, 408–09 (7th Cir. 1988). This is true even in the criminal context. *See Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986).

*United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003). This Court will not shy from summarily dismissing allegations of error where a party has presented perfunctory and undeveloped arguments

unsupported by pertinent authority.

### B.    Motion for Judgment of Acquittal

First, the Court will analyze the Defendant's challenges to the sufficiency of the evidence to determine whether under Rule 29, the evidence was sufficient to sustain the jury's verdict. The Defendant dedicates a single sentence of his Motion to his contention that he is entitled to acquittal. The government, in response, states:

> The jury was presented with evidence of the Defendant's participation in a drug conspiracy with the Defendant Jay Zambrana. They heard evidence that the Defendant used his position as a police officer to extort money from the Calo brothers. They heard evidence that the Defendant used his position as a police officer to pull over Raul Hurtado and Gil Nevarez, confine them, steal their drugs, [and] drive them to the Benefica Club where he participated in their murder. He then drove their bodies to his childhood home on the South side of Chicago where he set their car on fire to cover the crime. After hearing this evidence a jury did find the Defendant guilty beyond a reasonable doubt. A jury's verdict is to be given great deference. *United States v. Suggs*, 374 F.3d 508, 518 (7th Cir. 2004). Clearly, the government has met its burden of presenting evidence upon which a reasonable jury could find the Defendant guilty beyond a reasonable doubt and his motion under Federal Rule of Criminal Procedure 29 should be denied.

The Defendant's Reply declines to address the government's Response or to elaborate any further on his motion for acquittal, "as that motion is fact specific and the court has sufficient factual basis to determine whether the government proved the Defendant guilty on the relevant counts."

The Defendant's conclusory allegation that the government's evidence was insufficient to support the jury's guilty verdicts fails to meet the "very heavy burden" for a Rule 29 motion. *United States v. Muskovsky*, 863 F.2d 1319, 1322 (7th Cir. 1988). The Defendant cannot meet that burden by merely claiming a violation. For the reasons stated here and in the Court's oral ruling on the Defendant's previous motion for acquittal, the Defendant's motion for acquittal on all counts is

4

denied.

**C.     Motion for a New Trial**

Having determined that Defendant Ervin is not entitled to acquittal, the Court now examines whether, under Rule 33, letting the guilty verdict stand would result in a "miscarriage of justice." *Washington*, 184 F.3d at 657. The Defendant claims that he is entitled to a new trial because of numerous errors committed before and during his trial. His Motion includes a six-page list of abuses, listed 3(a) through 3(t), in outline form.

**(1)     *Arguments Unanswered in the Defendant's Reply***

The government's Response addressed each of the grounds on which the Defendant claims he is entitled to a new trial, listed 3(a) through 3(t) in his Motion. The Defendant's Reply, however, abandons most of these issues and only addresses 3(a), (b), (e), (j), (q), and (s). Because the Defendant presented no arguments in favor of allegations 3(a) through 3(t) in his Motion, because the government has addressed each of these contentions in its Response, and because the Defendant responded to only some of the government's statements in his Reply, the Court denies the Defendant's motion for a new trial as to those allegations in 3(a) through 3(t) that are not addressed in the Defendant's Reply. The Court will address individually those points raised in the Defendant's Reply.

**(2)     *Objections to the Jury Venire***

5

The Defendant complains that the Court erred in denying his motion to dismiss the jury venire and grant a mistrial when the venire consisted "of almost exclusively white individuals (it appeared that no more than 2 of the 86 members of the venire were African-American[,] which is the Defendant's race)."

In response, the government notes that the Defendant has not presented any evidence to support his claim that the selection of the jury was improper or that the jury pool did not represent a fair cross section of the community. Additionally, the Defendant has not offered any evidence that anyone was systematically excluded from the jury selection process.

The Defendant's Reply asks the Court to take judicial notice of the fact that African-Americans comprise more than 2.3% of the population in the Fort Wayne Division. Claiming that he has made out a prima facie case of systematic exclusion, he argues that it is the government's burden to show that this was mere happenstance and the result of a fair jury selection process, citing *Randolph v. California*, 380 F.3d 1133 (9th Cir. 2004) and *Taylor v. Louisiana*, 419 U.S. 522 (1975).

The Supreme Court held in *Taylor v. Louisiana* that the Sixth Amendment's "fair-cross-section requirement" was violated by the systematic exclusion of women, who in the judicial district in question amounted to 53% of the citizens eligible for jury service. *Taylor v. Louisiana*, 419 U.S. 522, 531 (1975). While the Defendant's Reply relies on Ninth Circuit law, it is of course only Seventh Circuit law that binds this Court. According to the Seventh Circuit,

> While juries must be taken from a source that is representative of the community, *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975), the Constitution does not require this to ensure representative juries, but rather impartial juries. *Holland v. Illinois*, 493 U.S. 474, 480 (1990).
>     To establish a prima facie case that their Sixth Amendment rights to a venire drawn from a fair cross-section of the community were violated, the defendants must

>show that the group allegedly excluded is a distinctive part of the community; that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and that this underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). If the defendants establish these elements, the government must show that those aspects of the jury selection process that result in the disproportionate exclusion of a distinctive group manifestly advance an overriding, significant government interest. *Id.*, 439 U.S. at 367–68; *United States v. Guy*, 924 F.2d 702, 705 (7th Cir. 1991).

*United States v. Ashley*, 54 F.3d 311, 313 (7th Cir. 1995). *See also United States v. Alanis*, 265 F.3d 576, 583 (7th Cir. 2001).

The Defendant failed to do the research required to determine what percentage of the population in the Fort Wayne Division of the Northern District of Indiana is African-American. It would not help the Defendant for the Court to take judicial notice, as he suggests, that African-Americans comprise more than 2.3% of the population in this Division.[1] To establish a prima facie case of systematic exclusion, a defendant must show that the representation of African-Americans in his venire was "not fair and reasonable in relation to the number of such persons in the community." *Alanis*, 265 F.3d at 583. In the Seventh Circuit, "a discrepancy of less than ten percent alone is not enough to demonstrate unfair or unreasonable representation of [a minority group] on the venire." *Ashley*, 54 F.3d at 314 (citing *United States v. McAnderson*, 914 F.2d 934, 941 (7th Cir. 1990)). Even under the Ninth Circuit law cited by the Defendant, an absolute disparity of 7.7 % between a group's presence in a district and that same population's representation in a jury venire in a murder prosecution was insufficient to satisfy the second prong of the aforementioned test from *Duren*.

---

[1] As the jury pool for trials in this Court are drawn from those counties in the Fort Wayne Division and not those in the Northern District of Indiana, it is of course the African-American population in this Division that is at issue, not the District, as the Defendant claims in his Reply.

In this case, the Defendant fails the standard in this Circuit and even his preferred Ninth Circuit standard. The Fort Wayne Division is comprised of the following counties: Adams, Allen, Blackford, DeKalb, Grant, Huntington, Jay, LaGrange, Noble, Steuben, Wells and Whitley. According to the 2000 census, African-Americans comprise 6.03% of the population of these counties.[2] The disparity between the African-American population in the Fort Wayne Division and its representation on the Defendant's jury venire is only 3.7%. Because the Defendant has failed to establish a prima facie case showing a low representation of African-Americans in his jury venire, his motion for a new trial based on the jury venire is denied.

**(3)** *Limited Cross-Examination of Government Witnesses*

The Defendant argues that the Court erred and prevented him from obtaining a fair trial when it granting the government's motion in limine regarding the cross-examination of government

---

[2]

| County | Population | Percentage of African-American Persons | Estimated Number of African-American Persons |
|---|---|---|---|
| Adams | 33,592 | 0.1% | 33.59 |
| Allen | 340,153 | 11.3% | 38,437.29 |
| Blackford | 13,876 | 0.1% | 13.88 |
| DeKalb | 41,129 | 0.3% | 123.39 |
| Grant | 71,572 | 7.2% | 5,153.18 |
| Huntington | 38,143 | 0.2% | 76.29 |
| Jay | 21,732 | 0.3% | 65.20 |
| LaGrange | 36,026 | 0.2% | 72.05 |
| Noble | 47,039 | 0.4% | 188.16 |
| Steuben | 33,706 | 0.4% | 134.82 |
| Wells | 27,912 | 0.2% | 55.82 |
| Whitley | 31,651 | 0.2% | 63.30 |
| **TOTALS** | **736,531** | | **44,416.97** |
| **Percentage of African-American Persons in the Fort Wayne Division:** | | | **6.03%** |

U.S. Census Bureau, Indiana QuickFacts, at http://quickfacts.census.gov/qfd/states/18/18183.html.

witnesses regarding their plea agreements and when it otherwise limited his cross-examination of government witnesses regarding their bias or interest. The government denies the Defendant's charges and claims that the Court properly limited the Defendant's cross-examination under Federal Rules of Evidence 608 and 611. In reply, the Defendant claims that the Court's Order granting the government's motion in limine, "which precluded the defense from making any inquiry concerning the specific parameters of the plea agreements of the government witnesses," violated his rights under the Sixth Amendment, citing *United States v. Schoneberg*, 388 F.3d 1275 (9th Cir. 2004). He writes, "The jurors were entitled to know the scope of the incredibly generous benefits provided to the government witnesses, but they were precluded from hearing such evidence because of the government's motion in limine."

    The Defendant's argument refers to the Court's Order, Docket Entry 1176, which granted the government's motion in limine and prohibited the Defendants from questioning cooperating witnesses about the maximum or potential penalties contained in their plea agreements. Seventh Circuit law states that a court does not violate a defendant's Sixth Amendment rights nor abuse its discretion when it prohibits a defendant from questioning government witnesses in detail about the specific sentences and sentence guideline ranges they faced before and after cooperating with the government. *See United States v. Arocho*, 305 F.3d 627, 636 (7th Cir. 2002). Because the Defendant has not given this Court any reason to doubt the correctness of its earlier holding, his motion for a new trial on this ground is denied.

**(4)**    *Government's Summary Charts*

    The Defendant's Motion contends that the Court erred when it overruled his objection to

9

"certain government summary charts." The government rightly complains that without further identification, it could not respond to this issue, citing *Holm*, 326 F.3d at 877. The Defendant's Reply adds that his complaint concerns summary charts of telephone calls that were either recorded or records of which were introduced at trial. The Defendant claims that these summary charts were "extremely prejudicial and misleading" as they related to him.

The Defendant's Motion and Reply add nothing to the arguments he made against these summary charts at trial. Because the Defendant has not given this Court any reason to doubt the correctness of its earlier holding, the Court affirms its earlier ruling admitting the summary charts of telephone calls and denies the Defendant's motion for a new trial on this ground.

**(5)** *Improper Closing Argument*

The Defendant's Motion states that the Court erred in denying his motion for a mistrial based on the government's improper closing argument. The government points the Court to Day 16 of the trial, where Defendant Ervin made a motion for mistrial based on the government's argument concerning Denny Arreola and the murders at the Benefica Club:

> MS. JOHNSON (government): We heard also—again, going back to the testimony of Denny Arreola, he goes inside after coming in from the parking lot, and he sees the Gary police officer, James Ervin, leading the two young men from the small bar area into the larger area where the stage is. He gets a soda out of the cooler, he waits a couple of minutes, again, he decides he's going to go take a look at see what's going on. And when he goes around the corner, he sees James Ervin and Gabriel Benavides in the last process of having strangled these two boys to death. And you know, it was mentioned, too, in his shock he drops his soda at that point. Ervin turns around and looks at him. You have the testimony of Benavides grabbing him and telling him, "If you don't keep your"—
>
> MR. THEIS (Defendant Ervin): Your Honor, I do have to interpose an objection at this time. Arreola did not identify James Ervin in this trial, and—

10

>    MS. COLLINS:  Well, he did. I responded to the argument that he did, in fact, identify the defendant James Ervin in redirect of his examination.
>
>    MR. THEIS:  He identified James Ervin in his redirect as being the individual out on the street.  There's no testimony she's saying right here about what happened at the Benefica Club. And I'll rely on the jury's recollection and the Court's record as to what happened, but there's no testimony.
>
>    THE COURT: Your objection is preserved on that point.

(Trial Transcript, Nov. 19, Page 238–39.)

The Court took the Defendant's motion for a mistrial up again at the end of the day on November 19 and again first thing in the morning on November 20. The Defendant listed several cases that set forth the standard for a mistrial based on whether the prosecutor misstated the evidence (Trial Transcript, Nov. 20, Page 3–6). The Court denied the Defendant's motion for a mistrial. The Defendant's post-trial motion for a mistrial cites nothing, let alone any new information that might cause the Court to reconsider its earlier ruling.

The Defendant's protestations have no basis in fact. The government's closing argument did not misrepresent the evidence, as Denny Arreola identified Defendant Ervin as the Gary police officer who pulled him over along with the murder victims, Gil Nevarez and Raul Hurtado, and then went to the Benefica club, where the murders took place. (Trial Transcript, Nov. 12, page 161.) Earlier in his testimony, Arreola testified that after Defendant Ervin pulled him over, he saw Ervin talking on the phone, asking where he should take Hurtado and Nevarez. *Id.* at 88–89. After Ervin received his instructions, Arreola followed Ervin to the Puerto Rican Benefica Club. *Id.* at 89. After waiting outside the club in his car for twenty minutes, Arreola knocked on the door and went inside the club. *Id.* at 91. Once inside, Ervin told Arreola to get a drink. *Id.* Arreola saw Ervin escort Hurtado and Nevarez from the back of the club to the stage or dance area. *Id.* at 92. He saw Ervin

11

on the stage, standing over the dead bodies of Hurtado and Nevarez, who were propped up on stage with their hands tied behind their backs and extension cords wrapped around their necks. *Id.* at 93–94. Arreola was scared and dropped his soda, at which point Defendant Ervin looked up at Arreola and told him to get out of the club, as what was going on there wasn't any of his business. *Id.* at 94.

The Defendant has not demonstrated that the government misrepresented Arreola's testimony and therefore has not shown how he was prejudiced by the government's closing argument. His motion for a new trial on this ground is therefore denied.

**(6)**     ***Admission of Autopsy Photographs***

The Defendant argues that the Court erred by denying his objection under Federal Rule of Evidence 403 to Government's Exhibits 318–24 (autopsy photographs), which he deems "highly prejudicial." The Court found these photographs admissible at trial in support of the testimony of Dr. Nancy Jones, though it had previously granted the Defendant's motion in limine, precluding the government from submitting photographs of the murder victims into evidence.

The government cites numerous cases to the effect that such photographs are admissible where they have probative value to help explain the government's account of the crime. The Defendant cedes that the government has cited valid caselaw, but argues that the autopsy photographs in this case did not show the identity of the victim, the manner of death, the murder weapon, or any other element of the crime, or corroborate the testimony of any witnesses. Rather, they had no purpose here but to inflame the passions of the jury and distract them from the issues that they could fairly consider.

The Defendant's Motion and Reply add nothing to objections made against this evidence's admission at trial. Accordingly, the Court affirms its earlier oral ruling admitting the autopsy photographs and denies the Defendant's motion for a new trial on this ground.

**(7)**     *Improper Jury Instructions*

Finally, the Defendant claims that the Court erred in denying his request for "certain jury instructions" and in granting "certain jury instructions" proposed by the government that were inaccurate statements of the law and inapplicable to the facts of this case. The government correctly states that without more information it cannot respond to the Defendant's vague assertions of error. The Defendant's reply reads in its entirety: "The Defendant renews his objection to court instruction No. 54."

The Court's Jury Instruction No. 54 reads:

> To sustain the charge in Count 29 of interstate travel in aid of interference with commerce by threat or violence the government must prove the following propositions:
> First, the Defendant Ervin traveled or caused another to travel in interstate commerce, or used or caused to be used a facility in interstate commerce, including the mail;
> Second, the Defendant Ervin did so with the intent to commit a crime of violence to further unlawful activity; and
> Third, thereafter the Defendant Ervin did commit or attempt to commit a crime of violence to further unlawful activity.
> If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the Defendant Ervin guilty.
> If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the Defendant Ervin not guilty.

The Defendant's vague and undeveloped objection to this modest adaptation of the Seventh Circuit's model jury instruction for 18 U.S.C. § 1952 is without merit. His motion for a new trial

13

based on faulty jury instructions is denied.

## CONCLUSION

For the reasons stated, the Court DENIES Defendant Ervin's Motion for Judgment of Acquittal or In the Alternative for a New Trial [DE 1363].

SO ORDERED on July 26, 2005.

                                                  S/ Theresa L. Springmann  
                                                  THERESA L. SPRINGMANN  
                                                  UNITED STATES DISTRICT COURT